[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13666
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cv-21481-KMM

PAUL TURNER,
on his own behalf and on behalf of all others similarly
situated passengers aboard the Costa Luminosa,

Plaintiff - Appellant,

versus

COSTA CROCIERE S.P.A.,
COSTA CRUISE LINES, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 19, 2021)

Before NEWSOM, BRASHER, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Plaintiff Paul Turner appeals the district court's order dismissing his putative class action complaint against Costa Crociere S.p.A., an Italian cruise operator, and its American subsidiary Costa Cruise Lines, Inc. (together, the "Defendants"). The Defendants operate and market the cruise ship Costa Luminosa. Turner alleges that the Defendants' negligence contributed to an outbreak of COVID-19 aboard the Costa Luminosa during his transatlantic voyage beginning on March 5, 2020. The district court dismissed Turner's complaint on forum non conveniens grounds because his passage ticket contract includes a forum selection clause requiring that all claims associated with his cruise be litigated in a court in Genoa, Italy. After careful review, we affirm.

These are the relevant facts as alleged in the complaint. Turner, a Wisconsin resident, purchased a ticket for a transatlantic cruise aboard the Costa Luminosa departing from Fort Lauderdale, Florida. By purchasing the ticket, he agreed to the attached "General Conditions of Passage Ticket Contract" (the "Contract"). Section 2(a) of the Contract provides:

> Any claim, controversy, dispute, suit, or matter of any kind whatsoever arising out of, concerned with, or incident to any Cruise or in connection with this Contract shall be instituted only in the courts of Genoa, Italy, to the exclusion of the courts of any other country, state, or nation. Italian law shall apply to any such proceedings, without effect to Italian choice-of-law principles.

What might have been a dream vacation for Turner turned into something of a nightmare. Right before Turner's cruise, the Costa Luminosa had conducted

2

another cruise out of Fort Lauderdale.  During this voyage, on February 29, 2020, the ship had to dock in the Cayman Islands and evacuate a 68-year-old Italian passenger who presented with symptoms consistent with COVID-19.  The passenger tested positive for COVID-19 and eventually died, though the Defendants did not learn of the positive test until after March 8.

On March 4, the night before Turner's cruise, Costa Cruise Lines emailed all passengers to let them know that while the World Health Organization had raised the alert level for COVID-19, Costa Cruise Lines remained in contact with health authorities and would make the "most appropriate decisions" and take the "most adequate measures" to ensure "the highest level of safety for its guests and crewmembers."  Costa also told passengers concerned about the virus that the ship was safe.  It did not hire any experts to verify that the ship had been sufficiently cleaned after the COVID-19-positive passenger disembarked.  It also allegedly failed to refuse boarding privileges to passengers and crewmembers who showed COVID-19 symptoms or had travelled to high-risk areas such as China.

Shortly after departing, on March 8, the Costa Luminosa docked in Puerto Rico in order to transport a northern Italian couple with COVID-19 symptoms to the hospital.  The couple later tested positive.  Ship staff did not inform passengers of the couple's circumstances in Puerto Rico; passengers found out a day later after the ship had already departed for a seven-day journey across the Atlantic to the Canary

3

Islands. Costa Cruise Lines did not instruct passengers to isolate, despite the issuance of CDC guidance instructing cruise ships to quarantine individuals who had had high-risk exposures to the virus. The ship assured passengers that it maintained 24-hour medical facilities, but Turner visited the medical facility and found that it was closed for much of the day. Meanwhile, several other passengers on the Costa Luminosa became ill with symptoms of COVID-19. Eventually, but not immediately, the captain ordered all passengers to quarantine. When all passengers finally disembarked in France on March 19, thirty-six of the seventy-five passengers tested positive for COVID-19. Turner himself contracted the virus.

Turner sued the Defendants in the United States District Court for the Southern District of Florida, seeking damages for himself and a putative class of his fellow Costa Luminosa passengers. He alleged claims arising under general maritime law for negligence, negligent misrepresentation, negligent infliction of emotional distress, and intentional infliction of emotional distress, as well as a claim for misleading advertising under Fla. Stat. § 817.41.

The Defendants filed a motion to dismiss on forum non conveniens grounds, arguing that the forum selection clause required Turner to litigate his claims in Italy. The district court agreed, finding that Turner's claims fell within the scope of the forum selection clause; that the forum selection clause was enforceable, did not contravene public policy, and was not fundamentally unfair; and that the forum non

4

conveniens factors as modified by the forum selection clause favored dismissal. Italy provided an adequate alternative forum and the balance of public interest factors, like Italy's relationship with the dispute -- Costa Crociere is the largest tour operator in Italy -- weighed in favor of dismissal. Turner appealed.

On appeal, Turner "assume[s]" that his claims fall within the scope of the forum selection clause's terms, but argues that the clause is unenforceable. He further argues that since the forum selection clause does not control, the district court erred by engaging in the modified forum non conveniens analysis that applies in the presence of a valid forum selection clause pursuant to Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 60–66 (2013). We disagree.

We review the enforceability of a forum selection clause de novo. Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231, 1235 (11th Cir. 2011); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290–91 (11th Cir. 1998). In this case arising under federal general maritime law, federal law determines the enforceability of the forum selection clause. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590 (1991). Forum selection clauses "are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." Rucker, 632 F.3d at 1236 (internal quotation marks and citation omitted). A plaintiff can defeat this presumption by showing that (1) the clause "'was induced by fraud or overreaching;

(2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy.'" Id. (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)).

Turner attempts to invoke the second (unfairness) and fourth (public policy) exceptions, but to no avail. Even when "the forum selection clause establishes a remote forum," a plaintiff seeking to establish that a forum selection clause is unenforceable due to inconvenience or unfairness "'bear[s] a heavy burden of proof.'" Shute, 499 U.S. at 592 (citation omitted). A plaintiff who relies on inconveniences that were "foreseeable at the time of contracting" in order to meet this burden can prevail only by showing "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Bremen, 407 U.S. at 17–18.

Turner claims that enforcing the forum selection clause would be fundamentally unfair because requiring him and fellow class members to travel to Italy to prosecute their claims "would significantly expose (and/or increase) the risk of complicating their [COVID-19] symptoms and/or contracting COVID-19 again," an inconvenience that was unforeseeable due to the unique nature of the COVID-19

pandemic.[1] Even assuming that travel difficulties and risks associated with COVID-19 are any less foreseeable than medical difficulties that would attend more standard personal injuries that were plainly foreseeable when Turner agreed to the forum selection clause, Turner still has not met his burden of proving that pursuit of his claims in Italy would subject him to fundamental unfairness. The reason is basic: he has not established that he would have to travel to Italy in order to pursue his case. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995) ("A plaintiff may have his 'day in court' without ever setting foot in a courtroom."). The Defendants produced an affidavit from an Italian attorney explaining that Turner would not be required to attend routine proceedings in person and that even for those events that required attendance, he could possibly either arrange for appointment of a special attorney to attend on his behalf or request that the event take place in the United States via international rogatory.

Turner vaguely characterizes these representations as "unsupported," but, notably, he did not file any declarations or any other evidence to counter them. In

---

[1] Turner also suggests that the selection of an Italian forum, even though Costa Cruise Lines is based in Pembroke Pines, Florida and the cruise departed from Fort Lauderdale, indicates that the inconvenience was not foreseeable and that the forum selection clause is unreasonable. See Bremen, 407 U.S. at 17 (noting that an agreement to litigate "essentially local disputes in a remote alien forum" might weigh in favor of finding the clause unreasonable or "might suggest . . . that the parties did not have the particular controversy in mind when they made their agreement"). But the selection of an Italian forum is not remote to this dispute; defendant Costa Crociere, the owner of both co-defendant Costa Cruise Lines and the Costa Luminosa itself, is headquartered in Italy. Moreover, Turner's cruise was scheduled to stop at three Italian ports before it canceled these plans due to the pandemic.

the district court, Turner did not even dispute the Italian attorney's statements.  He therefore has not met his burden to "'clearly show that enforcement [of the forum selection clause] would be unreasonable and unjust.'"  Est. of Myhra v. Royal Caribbean Cruises, Ltd., 695 F.3d 1233, 1240 (11th Cir. 2012) (citation omitted), superseded by statute on other grounds as stated in Caron v. NCL (Bahamas), Ltd., 910 F.3d 1359, 1364 n.2 (11th Cir. 2018).  We emphasize that our holding on this point is narrow: on this particular record, Turner has not presented evidence sufficient to meet his "'heavy burden of proof'" on his claim of unfairness.  Shute, 499 U.S. at 592 (citation omitted).

Turner's next claim, that the forum selection clause in his ticket contract contravenes public policy, likewise goes nowhere.  He says that the clause contravenes 46 U.S.C. § 30509(a), which provides:

> (1) In general.--The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting--
>
>> (A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or
>>
>> (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.
>
> (2) Voidness.--A provision described in paragraph (1) is void.

Turner contends that the forum selection clause effectively limits the Defendants' liability for negligently causing personal injury.  It limits the forum for his claims to

Italy, and, according to Turner, Italy has prohibited foreign travel due to COVID-19 and medical complications from COVID-19 would make it unfeasible for him to travel there anyway. But as we have just explained, Turner has not shown that travel and medical issues will prevent him from being able to litigate in Italy, much less done so "strong[ly]" enough to overcome the presumption in favor of forum selection clause enforceability. Rucker, 632 F.3d at 1236.

More to the point, both we and the Supreme Court have directly rejected the proposition that a routine cruise ship forum selection clause is a limitation on liability that contravenes § 30509(a), even when it points to a forum that is inconvenient for the plaintiff. Shute, 499 U.S. at 596–97 ("[R]espondents cite no authority for their contention that Congress' intent in enacting § [30509(a)] was to avoid having a plaintiff travel to a distant forum in order to litigate. The legislative history of § [30509(a)] suggests instead that this provision was enacted in response to passenger-ticket conditions purporting to limit the shipowner's liability for negligence or to remove the issue of liability from the scrutiny of any court by means of a clause providing that 'the question of liability and the measure of damages shall be determined by arbitration.' There was no prohibition of a forum-selection clause.") (citations omitted) (emphasis added); Est. of Myhra, 695 F.3d at 1246 ("We hold that 46 U.S.C. § 30509(a) does not bar a ship owner from including a forum-

9

selection clause in a passage contract, even if the chosen forum might apply substantive law that would impose a limitation on liability.").

Turner's final move is to claim that the district court abused its discretion by failing to apply proper forum non conveniens analysis. "It is . . . well settled in our decisional law that we may only reverse a district court's dismissal based on forum non conveniens if it constitutes a clear abuse of discretion." Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1288 (11th Cir. 2009) (cleaned up). Normally, to obtain a forum non conveniens dismissal, "'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1028 (11th Cir. 2014) (alteration adopted and citation omitted). The presence of a forum selection clause, however, modifies this analysis in important ways. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Atl. Marine, 571 U.S. at 63. Second, "[a] binding forum-selection clause requires the court to find that the forum non conveniens private factors entirely favor the selected forum." GDG Acquisitions, LLC, 749 F.3d at 1029. The Supreme Court has instructed that "a valid forum-selection clause

10

[should be] given controlling weight in all but the most exceptional cases." Atl. Marine, 571 U.S. at 63 (internal quotation marks and citation omitted).

Thus, our conclusion that the forum selection clause is enforceable and applies here compels us to reject most of Turner's remaining arguments, each of which proceeds from the mistaken premise that the district court should not have applied the forum non conveniens analysis in its modified, forum-selection-clause form. Turner says that the district court abused its discretion by refusing to defer to his chosen forum and by deeming the private interest factors to weigh in favor of the Italian forum. But because of the valid forum selection clause, each of these steps was consistent with -- indeed, required by -- the modified approach set forth in Atlantic Marine.

This leaves Turner with one last complaint about the district court's analysis, namely that when it analyzed the public forum non conveniens factors, it failed to consider one particular factor, "the unfairness of burdening citizens in an unrelated forum with jury duty." See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (the public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens

11

in an unrelated forum with jury duty."); see also Fresh Results, LLC v. ASF Holland, B.V., 921 F.3d 1043, 1049 (11th Cir. 2019).

This argument, too, misses the mark. For one thing, district courts are not required to consider all of the public factors, they may choose to discuss only those that are relevant. Fresh Results, 921 F.3d at 1051. The district court carefully considered several public factors including the administrative difficulties associated with the Southern District of Florida's busy docket (though it gave this factor little weight), the interest of the United States in making sure United States citizens generally have access to an American forum, Italy's interest in adjudicating claims related to its tourism industry, the likely need to apply Italian law based on the Contract's choice-of-law clause, and the fact that key events took place not in Florida but on board the Costa Luminosa as it sailed across the Atlantic. The district court's analysis of these factors was thorough and persuasive. Therefore, even if Turner's proposed additional factor, the unfairness of burdening the allegedly unrelated Italian forum, weighed in favor of keeping the case in Florida, we would be hard pressed to conclude that it was a "clear error of judgment" for the district to grant the motion to dismiss. Cf. Aldana, 578 F.3d at 1288, 1296 ("Nor are we convinced that the overall balance of private interests would be significantly affected by the second private interest cited by the dissent.") (citation omitted). Moreover, as we've explained -- and as the district court itself recognized when analyzing whether the

12

forum selection clause was enforceable -- Italy bears a significant relationship to this dispute; it therefore would not be unfair to burden Italian jurors with resolving it. Turner has not shown any shortcoming that counsels a departure from the "substantial deference" we normally afford to the district court's reasonable balancing of the forum non conveniens factors. Id. at 1288 (quoting Piper, 454 U.S. at 257).

In short, the forum selection clause is enforceable and applies to Turner's claims, and the district court acted well within its discretion when it granted the Defendant's motion to dismiss on forum non conveniens grounds.

**AFFIRMED**.