[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-12669

————————————————

AQUATE II LLC,

Plaintiff-Appellant,

*versus*

JESSICA TEDRICK MYERS,
KITUWAH SERVICES LLC,

Defendants-Appellees,

KITUWAH GLOBAL GOVERNMENT GROUP LLC

Defendant.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:22-cv-00360-AKK

_____

Before GRANT, ABUDU, and HULL, Circuit Judges.

GRANT, Circuit Judge:

This case first looks like a run-of-the-mill business dispute—but closer inspection reveals thorny questions of tribal sovereignty and contract interpretation. During the competitive bidding process for a government contract, one tribally owned business and its employee allegedly stole trade secrets from a competitor, another tribally owned business. The aggrieved business now seeks to vindicate its interests in federal court, while the alleged aggressor attempts to shield itself with tribal sovereign immunity. Meanwhile, the employee who allegedly stole the secrets says her employment contract mandates that the claims against her can be brought only in a designated tribal court. And that contention raises yet another area of dispute—whether the tribal court even exists.

We conclude that, because it waived sovereign immunity for claims related to the federal contracting program, the defendant tribe can be sued here. As for the former employee, the district court failed to consider whether the clause naming the allegedly nonexistent tribal court as the appropriate forum was valid and

enforceable. For both reasons, we reverse the district court's order dismissing the case and remand for further consideration.

## I.

The Small Business Administration's 8(a) Business Development Program is designed to assist certain "disadvantaged business concerns" compete in the American economy. 13 C.F.R. § 124.1; *see generally* 15 U.S.C. § 637(a). To that end, the federal government sets aside select federal contracts for businesses owned and controlled by individuals and groups the Small Business Act declares socially and economically disadvantaged. 15 U.S.C. § 637(a)(1), (4)–(6). Among those eligible are small businesses owned by certain Indian tribes. *Id.* § 637(a)(4)(A)(i)(II), (ii)(II).

Both businesses here qualify. AQuate II, LLC, is organized under the authority of the Alabama-Quassarte Tribal Town with its principal place of business in Huntsville, Alabama. Kituwah Services, LLC, is organized under the Eastern Band of Cherokee Indians with its principal place of business in Cherokee, North Carolina. Both tribal entities compete for and perform federal contracts under the 8(a) program.

In 2012, AQuate won an 8(a) contract to provide armed security services aboard the Sea-Based X-Band Radar-1 (SBX-1), a semi-submersible platform vessel that operates as part of the ballistic missile defense program. AQuate performed those services for the length of the five-year contract term and won the contract again in 2017 for another five-year term.

Jessica Myers worked for AQuate from 2013 through 2017 during the initial SBX-1 contract and bid preparation for the second.  As a condition of her employment, Myers signed several documents governing the use and disclosure of confidential information, as well as the standard dispute resolution policy for all Alabama-Quassarte Tribal Town-owned businesses.  That policy contained a clause designating a tribal court as the forum for any employment disputes:

> The tribal court of the Alabama-Quassarte Tribal Town shall be the exclusive venue for litigation arising out of Employee's employment.  If there is no tribal court in existence, then the CFR Court for the geographic region where Employee works shall be the exclusive venue for litigation arising out of Employee's employment.

Myers resigned in 2017 and took a job as the Director of Administration for Kituwah.  According to AQuate, she also took copies of contracts, proposals, personnel lists, and other security information with her—a violation of her confidentiality commitments.

AQuate intended to seek another five-year contract renewal for SBX-1 in 2022, but this time so did Kituwah.  To help her new employer construct a winning bid, Myers allegedly contacted her former colleagues at AQuate to solicit information about the company's pricing and compensation structure under the previous SBX-1 contracts.  Kituwah and Myers allegedly intended to use the

purported trade secret information and documents Myers took to compete in the SBX-1 bidding process. And beyond that, Kituwah and Myers (allegedly) approached AQuate employees with job offers—contingent, of course, on Kituwah winning the SBX-1 contract.

AQuate sued, alleging that Myers breached her employment agreements and that she and Kituwah violated both the Defend Trade Secrets Act of 2016 and the Alabama Trade Secrets Act. 18 U.S.C. § 1836; Ala. Code § 8-27-1 *et seq*. AQuate requested a preliminary injunction, and Kituwah and Myers moved to dismiss.

The district court granted the motion to dismiss. First, the court found that Kituwah had not waived sovereign immunity for the trade secrets claims because AQuate's lawsuit did not "relate to" participation in the 8(a) program. Because it had granted immunity to Kituwah on those claims, the district court dismissed the same claims against Myers, finding that Kituwah was a necessary and indispensable party under Rule 19. *See* Fed. R. Civ. P. 19. As for the remaining breach of contract claim against Myers, the court dismissed for *forum non conveniens*, concluding that the dispute resolution policy required the claim to be resolved in the Alabama-Quassarte Tribal Town court. The district court decided that question without an evidentiary hearing, relying on the parties' assertions in their motions briefing.

AQuate moved for reconsideration. It focused mainly on the forum question, arguing that the district court erred by ignoring evidence that the Alabama-Quassarte Tribal Town court

did not exist. The court denied that motion, and this appeal followed.

## II.

This Court reviews de novo a district court's grant of a motion to dismiss based on sovereign immunity. *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013). The district court's dismissal for *forum non conveniens* is reviewed for abuse of discretion and should be affirmed "unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (*GDG Acquisitions I*) (quotation omitted). We review de novo the enforceability of a forum selection clause. *Turner v. Costa Crociere*, 9 F.4th 1341, 1345 (11th Cir. 2021).

## III.

As a separate sovereign, "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). The burden is on AQuate, as the party seeking federal jurisdiction, to show that Kituwah "expressly and unmistakably waived its right to sovereign immunity from suit." *Furry v. Miccosukee Tribe of Indians of Florida*, 685 F.3d 1224, 1234 (11th Cir. 2012) (quotation omitted).

The 8(a) program, at least as a general matter, requires such a waiver from participating tribes. So, to take part, a tribally owned business must adopt an express sovereign immunity waiver—also known as a "sue and be sued" clause—designating the United

States federal courts as "courts of competent jurisdiction for all matters relating to SBA's programs including, but not limited to, 8(a) BD [Business Development] program participation, loans, and contract performance." 13 C.F.R. § 124.109(c)(1). Kituwah's articles of organization include the required language:

> The United States Federal Courts are hereby designated as being among the courts of competent jurisdiction for all disputes or other matters *relating to this Company's involvement in programs of the Small Business Administration*, including but not limited to, 8(a) Business Development program participation, loans, and contract performance. Simply stated, the Company hereby specifically consents to "sue or be sued" within the jurisdiction of the Federal Court System of the United States.

The question here is whether AQuate's lawsuit against Kituwah—for allegedly stealing trade secrets about AQuate's 8(a) SBX-1 contract to improve its own bid for that same contract—is a "matter relating to" Kituwah's involvement in the 8(a) program.[1] It is, so Kituwah's sovereign immunity waiver applies.

---

[1] No one disputes that Kituwah is a part of the Eastern Band of Cherokee Indians for the purposes of sovereign immunity, or that Kituwah's sovereign immunity waiver is coextensive with the 8(a) program's waiver requirements.

No binding, or even persuasive, authority has established the scope of 8(a) sovereign immunity waivers.[2]  So we will start from the beginning, with the plain meaning of the phrase "relating to."  The Oxford English Dictionary defines "relate to" as "[t]o have some connection with; to stand in relation to."  *Relate*, Oxford English Dictionary (online ed.) https://perma.cc/FM2V-S4ZW.  And Black's Law Dictionary defines "related" as "[c]onnected in some way; having relationship to or with something else."  *Related*, Black's Law Dictionary (11th ed. 2019).  It is no secret that the ordinary meaning of this term is "a broad one."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).  That is true across a range of contexts.  In fact, "Congress characteristically employs the phrase to reach any subject that has a connection with, or reference to, the topics [a] statute enumerates."  *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017) (quotation omitted).  It is hard, candidly, to think of a more capacious term to use in defining the coverage of a provision.

AQuate's claims against Kituwah are "related to" Kituwah's participation in the 8(a) program.  Kituwah participated in the program by preparing and later submitting a bid for the SBX-1

---

[2] It appears that only three other courts—all out-of-circuit district courts—have considered this issue, and even those decisions are sparse in their reasoning.  *See Applied Scis. & Info. Sys., Inc. v. DDC Constr. Servs., LLC*, No. 19-CV-575, 2020 WL 2738243, at *4–5 (E.D. Va. Mar. 30, 2020); *Rassi v. Fed. Program Integrators, LLC*, 69 F. Supp. 3d 288, 292–93 (D. Me. 2014); *Hunter v. Redhawk Network Sec., LLC*, No. 17-CV-0962, 2018 WL 4171612, at *6–8 (D. Or. April 26, 2018).

contract, and the allegation that it stole trade secrets to boost its bid is certainly "connected in some way" to that participation.

It would defy common sense to hold otherwise. Assuming that AQuate's allegations are true (as we must when reviewing a motion to dismiss), Kituwah stole information about AQuate's "compensation structure, proposals, contract terms, and bidding strategies" for the SBX-1 contract—an 8(a) contract. And it did so to gain a competitive advantage in its own bid for that same 8(a) contract. In other words, but for its attempt to win the bid for the 8(a) contract, Kituwah would not have used stolen trade secrets or unlawfully solicited information from current AQuate employees. That alleged misconduct "relates to" Kituwah's participation in the 8(a) program.

As a practical matter, it is not obvious what other language could have been employed to cover this kind of claim if "related to" were not enough. Indeed, Kituwah's counsel stated during oral argument that if the tribe had intended to waive immunity from suits like AQuate's, it would have needed to adopt a blanket immunity waiver for all suits. To the extent that counsel was trying to suggest that if "related to" is not broad enough to capture this lawsuit, nothing else would be either, we agree. Perhaps recognizing as much, Kituwah's counsel quickly walked that statement back, saying instead that "the tribe could waive sovereign immunity as to business tort claims connected to its efforts to submit a bid on an SBA contract." But we struggle to see how that language is anything other than a subset of the language

in Kituwah's immunity waiver. Is "connected with" broader than "related to"? We (and the Supreme Court) think not. *See Morales*, 504 U.S. at 383–84.

The district court disagreed. It concluded instead that "AQuate's claims are not based on Kituwah's participation in the 8(a) program and do not involve allegations that Kituwah violated any of the 8(a) program's requirements." This conclusion is flawed for at least two reasons. *First*, as we have already explained, preparing and later submitting a bid for an exclusive 8(a) contract is a form of participation in the 8(a) program, so AQuate's claim that Kituwah misappropriated trade secrets for that bid is necessarily "based on Kituwah's participation in the 8(a) program." *Second*, neither Kituwah's waiver, nor the regulation it was based on, conditioned the waiver of sovereign immunity on Kituwah's violation of any specific 8(a) program requirements. *See* 13 C.F.R. § 124.109(c)(1). Kituwah waived immunity for all matters "relating to" its involvement in the 8(a) program.

AQuate's trade secrets claims "relate to" Kituwah's participation in the 8(a) program and thus fall within the scope of Kituwah's immunity waiver. The district court erred in concluding otherwise. Because we reverse the sovereign immunity dismissal, we also reverse the dismissal of the trade secrets claims against Myers; it is no longer even arguably precluded by Rule 19, which governs the compulsory joinder of indispensable parties. *See* Fed. R. Civ. P. 19.

**IV.**

Now for the district court's dismissal of AQuate's breach of contract claim against Myers. We first consider—as we must—whether the forum-selection clause in Myers's employment contract is enforceable, and then, if so, whether dismissal for *forum non conveniens* was proper on account of that clause.

Procedurally, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Ordinarily, to obtain dismissal for *forum non conveniens*, "the moving party must show that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1312 (11th Cir. 2017) (*GDG Acquisitions II*) (quotation omitted).

But when there is a valid forum-selection clause, "[t]he calculus changes." *Atlantic Marine*, 571 U.S. at 63. These clauses should be "given controlling weight in all but the most exceptional cases." *Id.* (quotation omitted). So the usual importance attached to the plaintiff's choice of forum evaporates; instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* And rather than considering the usual panoply of *forum non conveniens* factors, the district court may

12                    Opinion of the Court                    22-12669

only consider arguments about the public interest, including considerations like "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (alteration adopted) (quotation omitted). These factors, though, "rarely defeat a transfer motion"—the forum-selection clause will almost always control. *Id.* at 64.

The enforceability of forum-selection clauses is governed by federal law. *See, e.g.*, *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *cf. Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 71–72 (2024). The Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.* is instructive.[3]  407 U.S. 1 (1972). There, the Court explained that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10; *see also Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). Following the Court's guidance in *The Bremen*, we look to four factors to evaluate whether a forum-selection clause should be "invalidated" as unfair or

---

[3] Even if state law were to apply to the validity of a forum-selection clause, it would not change the analysis here because Alabama has adopted *The Bremen*'s test for the enforceability of forum-selection clauses. *See Rucker v. Oasis Legal Fin., LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011); *Pro. Ins. v. Sutherland*, 700 So. 2d 347, 350 (Ala. 1997). We can thus "apply both federal and Alabama law harmoniously in deciding the validity of the forum selection clause in this case." *Rucker*, 632 F.3d at 1236.

unreasonable: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281.[4] These factors will rarely invalidate a forum-selection clause, which is, after all, a contract between two parties. *See id.* But if a party can show that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," the forum-selection clause will not be enforceable. *The Bremen*, 407 U.S. at 18.

Federal courts cannot sidestep our responsibility to consider this question under *The Bremen* before applying the *forum non conveniens* inquiry as directed by *Atlantic Marine*. And that order of operations is nothing new—take *Turner v. Costa Crociere*. 9 F.4th 1341. There, we considered the district court's *forum non conveniens* dismissal of a class action against an Italian cruise operator. *Id.* at 1344–45. We first explained the contours of *The Bremen*, and then considered whether the plaintiff had shown that enforcement of the forum-selection clause would be "fundamentally unfair" or "contravene public policy." *Id.* at 1345–47. The answer was no, so we proceeded to *Atlantic Marine* and performed the typical *forum*

---

[4] Our cases have inconsistently used the terms "valid" and "enforceable" when articulating the effect of *The Bremen*'s test on forum-selection clauses without explaining whether, or how, these terms differ. *Compare Krenkel*, 579 F.3d at 1281, *with Turner*, 9 F.4th at 1345. Whatever their differences may (or may not) be, it does not change the result here, so we do not delve into that issue.

*non conveniens* analysis that applies when there is an enforceable forum-selection clause. *Id.* at 1347–49. Same goes for *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284 (11th Cir. 2021). There, this Court explained that the forum-selection clause would not be enforced if the plaintiff could make a "strong showing that enforcement would be unfair or unreasonable" under *The Bremen*. *Id.* at 1297 (quotation omitted). In that case, too, the plaintiff failed to make such a showing, so we applied *Atlantic Marine* and dismissed the case for *forum non conveniens*. *Id.* at 1298–1300.

Many other circuits have followed the same approach. As the Sixth Circuit explained, because "the presence of a valid and enforceable forum-selection clause alters the type of forum-non-conveniens analysis a court must apply, it follows that a court must first—before balancing the forum-non-conveniens factors—determine whether a forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021); *see also Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767, 773–776 (5th Cir. 2016); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774–76 (7th Cir. 2014); *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914–17 (9th Cir. 2019); *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874–76 (D.C. Cir. 2019).

The Seventh Circuit's decision in *Jackson* is especially useful because it also involved a tribal forum. 764 F.3d 765. That case looked at the validity of an arbitration clause (a type of forum-

selection clause) in a loan agreement. *Id.* at 773–76; *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630–31 (1985). The clause specified the Cheyenne River Sioux Tribe as the only arbitral forum for dispute resolution. *Jackson*, 764 F.3d at 769. The court began by considering the validity of the clause and found that enforcement would be unreasonable under the circumstances because the record had clearly established that the forum did not exist—the Cheyenne River Sioux Tribe did not involve itself in the business of arbitration. *Id.* at 776. Because the court concluded that the forum was "illusory," it had "no hesitation" in finding enforcement to be "unreasonable under *M/S Bremen*." *Id.*

In line with these cases, the district court should have considered the validity and enforceability of the forum-selection clause under *The Bremen* before moving on to the *forum non conveniens* analysis. Had the district court conducted that analysis, it very well might have concluded that enforcing the forum-selection clause in Myers's employment contract would be "unfair or unreasonable under the circumstances." *Krenkel*, 579 F.3d at 1281.

AQuate repeatedly argued that the Alabama-Quassarte Tribal Town court, though designated in the forum-selection clause, did not exist, and that any evidence of the purported court was fabricated by an ousted tribal chief in an effort to retain power. AQuate submitted an affidavit from Famous Marshall, the Chairman of Economic Development for the Tribal Town, which

stated that the tribe's constitution did not provide for a court system and that the supposed tribal court was fictitious.

Kituwah and Myers, meanwhile, maintained that the Alabama-Quassarte Tribal Town court was legitimate. In support, they submitted two orders allegedly from that court. Suspiciously absent, however, was any affidavit verifying that these exhibits were authentic—and the faces of the orders are problematic. To start, despite being more than four months apart, relating to different issues, and seemingly binding different parties, both orders are marked with the same number—22-001. But one includes it as the "court order" number, while the other lists it as the case number. If correct, that is an odd coincidence. The orders also have remarkably different captions and formatting, which would be surprising to see from a legitimate court. And the subjects of the two orders are more curious still. The first claims to ban Famous Marshall and several other members (at least one of whom is connected to AQuate) from tribal property and offices. The second "enjoins" AQuate (from doing what, exactly, it does not say). These orders, in short, lack any indicia of authenticity.

Given this record, we conclude that the district court erred when it concluded that the record did "not reveal any basis to suggest" that the so-called orders of the Alabama-Quassarte Tribal Town court were fraudulent. The record contained an affidavit testifying that the court was fake and unsupported by the tribe's

governing charter. If that is not a "basis to suggest" that these orders are fraudulent, we struggle to imagine what would be.[5]

We cannot say definitively whether the forum-selection clause is or is not enforceable—that is for the district court to decide on remand with an appropriate evidentiary hearing. Of course, AQuate bears the burden to show enforcement is unreasonable under the circumstances. But we are confident that, should the district court determine that the Alabama-Quassarte Tribal Town court is nonexistent, we, like the Seventh Circuit, would have "no hesitation concluding that an illusory forum is unreasonable under *M/S Bremen*." *Jackson*, 764 F.3d at 776.[6]

★     ★     ★

The district court erred in dismissing the claims against Kituwah on the basis of sovereign immunity, as well as in dismissing Myers from the trade secrets claims under Rule 19. The district court also erred in dismissing the breach of contract claim against Myers on the basis of *forum non conveniens*—it failed to consider the enforceability of the forum-selection clause and to

---

[5] The forum-selection clause in Myers's contract also specified that, if "there is no tribal court in existence, then the CFR Court for the geographic region where Employee works shall be the exclusive venue for litigation arising out of Employee's employment." Oddly, however, neither party made arguments about the viability of this venue or submitted any evidence in that regard. Nothing herein precludes the parties from raising this issue on remand.

[6] At oral argument, counsel appeared to suggest that a tribal court may exist now even if it did not when the motion to dismiss was decided. We leave that for the district court to sort out.

18                    Opinion of the Court                    22-12669

consider all the evidence before it.  The decision of the district court is therefore **REVERSED** and **REMANDED** for further proceedings.